Joseph R. Re (State Bar No. 134,479)
2jrr@kmob.com
Jon W. Gurka (State Bar No. 187,964)
2jwg@kmob.com
Benjamin A. Katzenellenbogen (State Bar No. 208,527)
2bak@kmob.com
Colin B. Heideman (State Bar No. 238,674)
2cbh@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

[FOR A COMPLETE LISTING OF PLAINTIFF/COUNTER DEFENDANT'S COUNSEL REFER TO SIGNATURE PAGE]

Attorneys for Plaintiff/Counterdefendant
ADVANCED THERMAL SCIENCES CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ADVANCED THERMAL SCIENCES CORPORATION, a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>APPLIED MATERIALS, INC., a Delaware Corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No.<br>SACV 07-1384 JVS (JWJx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ADVANCED THERMAL SCIENCES CORPORATION'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>The Honorable James V. Selna |

# I. INTRODUCTION

Throughout this litigation, AMI has known that ATS maintains that AMI is obligated to prosecute the ten pending AMI patent applications (the "AMI Applications") as a constructive trustee until the parties' ownership dispute is finally resolved. AMI wrote to ATS last week specifying how it plans on prosecuting the pending applications. AMI's plans are antithetical to acting as a constructive trustee. Because AMI plans to file documents with the Patent Office next week that will harm two of the AMI Applications, ATS seeks emergency relief. AMI also plans to file similar documents over the next three months that will harm more of the AMI Applications.

The Patent Office has informed AMI that six of the AMI Applications are ready to issue as patents. Last week, AMI prevented one of the AMI Applications from issuing by refusing the pay the issue fee, requesting further examination, and requesting a 90-day stay of the examination proceedings. AMI also intends to refuse to pay the issue fee and to request further examination for all of the allowed AMI Applications until the Court issues its decision in this case.

AMI's actions are inconsistent with AMI's duty to act as a constructive trustee and are irreparably harming the AMI Applications in at least two ways. First, by requesting continued examination of allowed claims, AMI is risking that the Patent Office may decline to allow the claims or require further narrowing amendments. Second, even if the claims do eventually issue in their current form, AMI is reducing the effective term of any resulting patents by delaying their issuance. AMI's unilateral decision to delay the issuance of patents in which ATS claims an interest is improper.

Accordingly, ATS requests that the Court order AMI to take specific action as a constructive trustee of the AMI Applications through final resolution of this matter, including all appeals, so that AMI takes all steps necessary to

- 1 -

facilitate the prompt issuance of the disputed applications. ATS specifically requests that the Court order AMI to:

- Provide ATS with copies of any proposed submissions before submitting them to the Patent Office;

- Promptly pay the issue fee for all allowed AMI Applications;

- Refrain from filing any papers with the Patent Office, including Requests for Continued Examination, for the purpose of delaying issuance of the AMI Applications; and

- Submit to the Patent Office any additional litigation-related information that may be material to prosecution of the AMI Applications.

## II. COMPLIANCE WITH LOCAL RULE 7-19

ATS provided notice of this Application to AMI's counsel, Hopkins Guy, on Wednesday, April 21, 2010. My Guy's phone number is (650) 614-7452, and his address at Orrick, Herrington & Sutcliffe, LLP is 1000 Marsh Road, Menlo Park, CA 94024. AMI stated that it would oppose this Application.

AMI requested that ATS provide AMI with a courtesy copy of this application 12 hours prior to filing it. Due to the urgency of the requested relief, ATS offered to inform the Court that AMI requested an additional 12 hours to oppose. ATS has no objection to the Court granting AMI 36 hours to oppose this Application.

## III. ARGUMENT

### A. Legal Standard

The standard for obtaining a temporary restraining order is the same as the standard for issuing a preliminary injunction. *GameCaster, Inc. v. DirecTV, Inc.*, 2006 U.S. Dist. LEXIS 92045, *9-10 (S.D. Cal. 2006). The standard for whether to grant preliminary injunctive relief is based upon assessing four factors: (1) the likelihood of success on the merits; (2) irreparable harm if the

injunction is not granted; (3) the balance of equities between the parties; and (4) the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. ___, 129 S. Ct. 365, 374 (2008); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003).

ATS is entitled to the requested injunctive relief because ATS has shown a high likelihood of success on the merits, irreparable harm, that the balance of hardships tips strongly in favor of maximizing the value of the disputed patent applications and that the public interest further supports granting ATS's requested relief.

**B.    ATS Is Likely To Succeed On Its Claim For Ownership Of The AMI Applications**

ATS is likely to prevail on its claim for at least partial ownership of the AMI Applications. This Court conducted a bench trial in this matter from November 10-20, 2009, and one of the primary issues at trial was whether ATS had an ownership interest in the AMI Applications. (*See* Final Pretrial Conference Order [Doc. 671] at 9-10; ATS Trial Brief [Doc. 675] at 10-11, 18-20.)

Although the Court has not yet issued its decision, ATS presented abundant evidence at trial establishing that it made an "inventive or creative contribution" to at least one claim in each of the AMI Applications. (*See* ATS's [Proposed] Findings of Fact and Conclusions of Law at 32-55.) ATS established that it was the first to conceive of the idea of using the electrostatic chuck as an evaporator, and that ATS disclosed that concept to several AMI employees (including Dr. Brillhart and Mr. Fovell) before Dr. Brillhart's alleged conception. (*Id.*) Thus, ATS is likely to establish that the AMI Applications are Jointly Developed IP under the parties' Joint Development Agreement and, consequently, that ATS has a joint ownership interest in the AMI Applications (and any patents that issue therefrom).

## C. ATS And The AMI Applications Will Be Irreparably Harmed If AMI Continues To Delay Issuance Of The Allowed Applications

AMI has unequivocally represented to ATS that it intends to prevent each of the AMI Applications from issuing as patents until after this Court issues a decision in this case. (Ex. 2.)[1] This unilateral decision will cause irreparable harm to the disputed patent applications in violation of any AMI obligation to act as a constructive trustee.

### 1. AMI Has Been On Notice That ATS Maintains That AMI Should Be Acting As A Constructive Trustee

AMI has known for years that ATS believes AMI should be prosecuting the AMI Applications as a constructive trustee until the ownership of the applications is resolved. ATS's Complaint specifically requested that AMI "continue to act as a constructive trustee on ATS's behalf in maintaining and prosecuting the [AMI] Patent Applications." (Complaint [Doc. No. 001], Prayer for Relief, at ¶ D.) ATS also raised the issue in pretrial briefing, by explaining that AMI had improperly harmed ATS's interests in the AMI Applications by unilaterally cancelling claims to which ATS had clearly made an "inventive or creative contribution." (ATS's Trial Brief [Doc. No. 675] at 18-20 (requesting that the Court order AMI to take all steps necessary to reinstate the claims that AMI had cancelled).) There is no dispute that AMI knew, at all times during this litigation, that ATS believed AMI is required to act as a constructive trustee and was obligated to prosecute the AMI Applications in the best interests of the trust assets, *i.e.*, the AMI Applications.

### 2. AMI Has Not Acted In The Best Interests Of The Trust Assets

Six of the ten AMI Applications have received a Notice of Allowance

---

[1] All exhibits referenced herein are attached to the Katzenellenbogen declaration, filed herewith.

- 4 -

from the Patent Office. (*See* Exs. 3-8.) A Notice of Allowance means that the applications will issue as patents upon the payment of a fee.

The issue fee for U.S. Patent Application No. 11/408,558 ("the '558 application") was due on April 12, 2010. (Ex. 3.) Rather than paying the issue fee and allowing the '558 application to issue, AMI filed a Request for Continued Examination ("RCE"). (Ex. 9.) Filing the RCE prevented the application from issuing and re-opened substantive examination of the application. *See* 37 C.F.R. § 1.114. During continued examination, the examiner may reject the claims or require narrowing amendments. Ultimately, the patent may issue with substantially different (and narrower) claims, or may not issue at all. Even if the claims are not amended during continued prosecution, the filing of the RCE has reduced the effective term of any patent that eventually issues because the patent will expire based on the original filing date.

In addition to filing the RCE, AMI also filed a Request for Suspension of Action, asking the Patent Office to suspend examination of the '558 application for 90 days. (Ex. 10.) AMI's sole basis for requesting that the PTO suspend examination was that AMI was awaiting the Court's decision in this litigation. (*Id.*)

Upon learning of AMI's actions with respect to the '558 application from the Patent Office website, ATS requested in writing that AMI withdraw its request for suspension of action and timely pay the issue fee for the remaining five allowed AMI Applications. (Ex. 1.) ATS explained that AMI's prosecution strategy was harming the assets in which ATS claimed an interest. (*Id.*)

AMI responded by agreeing to withdraw its request for suspension of action, but refused to agree to pay the issue fee for the remaining applications. (Ex. 2.) Instead, AMI announced that it will file RCEs for each of the allowed

- 5 -

AMI Applications. (*Id.*) AMI further indicated that it intends to prevent any of the AMI Applications from issuing until the Court issues a decision in this case. (*Id.*)

### 3. **AMI's Actions Will Irreparably Harm The Trust Assets**

ATS seeks immediate relief in the form of a Temporary Restraining Order because the issue fees for the next two allowed applications are due on ***April 26 and April 29, 2010***. (Exs. 4-5.) AMI intends to prevent these applications from issuing by refusing to pay the issue fees and by filing RCEs. (Ex. 2.) The issue fees for the other allowed applications will be due in May, June, and July. (Exs. 6-8.) AMI's filing of RCEs will harm the AMI Applications by reducing the effective patent term, and needlessly create a risk that patents may never issue from these allowed applications.

The Court should prevent AMI from reducing the effective term of the patents that may issue from the AMI Applications because, once lost, it can never be recaptured. To the extent that someone may be currently using the technology claimed in the AMI Applications, the owners of the AMI Applications will not be able to recover damages for such use that occurs before the patents issue. Preventing the AMI Applications from issuing is not in the best interests of the assets of the trust.

AMI appears to recognize that delay is harming the AMI Applications. AMI agreed to withdraw its request for a suspension of action in connection with the '558 application because it will reduce the effective patent term, and AMI has agreed not to file similar requests for the other AMI Applications. (Ex. 2.) Nevertheless, AMI intends to file RCEs and prevent each of the allowed AMI Applications from issuing, thereby effectively accomplishing the same result – a shorter patent term. (*Id.*)

**D. The Balance of Hardships Favors Allowing The AMI Applications to Issue**

    **1. AMI's Actions Have No Potential Benefit To The AMI Applications.**

AMI's plans to delay issuance of the allowed AMI Applications do not confer any benefit on AMI or the AMI Applications, let alone one that could outweigh the irreparable harm to the AMI Applications and their eventual legal owner(s). Last week, AMI asserted that filing RCEs was necessary to submit information relating to the present litigation to the Patent Office to satisfy AMI's duty of candor. (*Id.*) Whatever merit this argument may have had during the active stages of this litigation, the trial in this case ended in November, and closing arguments were completed in December. AMI has had four months to submit to the Patent Office any material information from the trial. The simple fact that AMI has not yet submitted to the Patent Office information that AMI purportedly considers material to the pending AMI Applications confirms that AMI is not acting in the best interests of the AMI Applications.

It appears that AMI is using the need to disclose allegedly material information from the litigation as an excuse to delay prosecution and harm the AMI Applications. For example, the issue fee for U.S. Application No. 11/409,184 is due on April 26, 2010. (Ex. 4.) AMI submitted references to the Patent Office in connection with this application on December 22, 2009, and again on January 18, 2010. Yet AMI did not submit any documents relating to the litigation. Now, months later and on the eve of issuance, AMI intends to improperly delay issuance of the patent and harm its value on the grounds that AMI needs to submit information that could have been submitted months ago.

Similarly, the issue fee for U.S. Application No. 11/409,326 is due on April 29, 2010. (Ex. 5.) AMI submitted references to the Patent Office in

connection with this application on January 15, 2010, but did not include any litigation-related information. AMI also informed the Patent Office of actions in related applications on February 8, 2010, and March 5, 2010, but did not mention the litigation or submit any litigation documents. AMI's assertion that it now needs to prevent issuance so that it can submit documents from the litigation does not justify further delay.

Thus, the balance of hardships strongly favors requiring AMI to act as a constructive trustee, and specifically requiring AMI to immediately submit to the Patent Office any material information from the litigation and causing the AMI Applications to issue as soon as possible.

### 2. The Ownership Issues Will Not Be Finally Resolved By This Court's Decision

AMI has stated that the "issuance [of the patents] should await the Court's decision in the matter." (Ex. 2.) This is incorrect for at least two reasons.

First, there is no reason why AMI should wait for the Court's decision *before* acting as a constructive trustee. Indeed, AMI has been on notice that it should be acting as a constructive trustee from the inception of the case. As a constructive trustee, AMI should be acting in the best interests of the assets of the trust until legal ownership of those assets is finally resolved. Regardless of the outcome of this litigation, the interests of the assets of the trust, *i.e.*, the AMI Applications, as well as the interests of the eventual legal owner(s) of those assets, are best served by maximizing the effective patent term and the likelihood of the AMI Applications issuing as patents. Thus, AMI should be prosecuting the AMI Applications to ensure that they issue as promptly as possible, including by promptly submitting any material information relating to this litigation and paying the issue fees. There is simply no advantage to the AMI Applications or to their eventual owner(s) by delaying issuance of the

patents until this Court issues its decision.

Second, as a practical matter, the Court's decision may be appealed. Unless and until AMI assigns legal ownership to ATS, or a court of last resort conclusively determines that ATS has no legal interest in the AMI Applications, AMI should be prosecuting the AMI Applications as a constructive trustee.

### E. The Public Interest

The general public does not appear to have any significant interest in the AMI Applications. To the extent the public has any interest, the public interest would favor prompt issuance of the allowed AMI Applications. Preventing needless further examination will reduce backlog in the already overcrowded Patent Office. It will also provide the interested members of the public with the earliest possible notice of the patented subject matter. The public will not be better served by allowing AMI to artificially delay the issuance of patents with allowed claims.

### IV. CONCLUSION

For the reasons set forth above, the Court should immediately enter the [Proposed] Temporary Restraining Order. AMI should be ordered to:

(1) Serve as a constructive trustee on ATS's behalf in maintaining and prosecuting the AMI Applications, taking all actions necessary for the best interests of the AMI Applications, until a final non-appealable decision is issued in this case or the time for any such appeal expires;

(2) Take all necessary steps to ensure that the AMI Applications issue promptly and without unnecessary delay, including by promptly paying the required issue fee for all AMI Applications that have been allowed by the Patent Office;

(3) Refrain from filing any papers with the Patent Office, including Requests for Continued Examination, for the purpose of delaying issuance of the AMI Applications;

(4) Provide ATS's counsel of record in this litigation with copies of any proposed submissions to the Patent Office, with the exception of litigation-related documents discussed below, at least 5 days before submitting the papers to the Patent Office; and

(5) To the extent that AMI has not already disclosed all material litigation-related documents to the Patent Office in connection with all of the pending AMI Applications, submit any such documents to the Patent Office within 3 days.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 21, 2010

By: /s/ Benjamin A. Katzenellenbogen
    Joseph R. Re
    Jon W. Gurka
    Benjamin A. Katzenellenbogen
    Colin B. Heideman

KATTEN MUCHIN ROSENMAN LLP
Steven A. Lamb (State Bar No. 132,534)
steven.lamb@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 712-8257

Attorneys for Plaintiff/Counterdefendant
ADVANCED THERMAL SCIENCES
CORPORATION

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, 14th Floor, Irvine, California 92614. On April 21, 2010, I served the within **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ADVANCED THERMAL SCIENCES CORPORATION'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** on the parties or their counsel shown below, as follows:

**VIA ELECTRONIC MAIL AND FAX TO:**

G. Hopkins Guy, III
Michael F. Heafey
Jan Ellard
Siddhartha M. Venkatesan
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road,
Menlo Park, CA 94024
Applied_ATS-OHS@orrick.com
hopguy@orrick.com
mheafey@orrick.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 21, 2010, at Irvine, California.

_____
Jeff T. Roche

8908567_8
042110