Joseph R. Re (State Bar No. 134,479)
2jrr@kmob.com
Jon W. Gurka (State Bar No. 187,964)
2jwg@kmob.com
Benjamin A. Katzenellenbogen (State Bar No. 208,527)
2bak@kmob.com
Colin B. Heideman (State Bar No. 238,674)
2cbh@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:   (949) 760-0404
Facsimile:    (949) 760-9502

[FOR A COMPLETE LISTING OF PLAINTIFF/COUNTER DEFENDANT'S COUNSEL REFER TO SIGNATURE PAGE]

Attorneys for Plaintiff/Counterdefendant
ADVANCED THERMAL SCIENCES CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ADVANCED THERMAL SCIENCES CORPORATION, a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>APPLIED MATERIALS, INC., a Delaware Corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No.<br>SACV 07-1384 JVS (JWJx)<br><br>**MEMORANDUM IN SUPPORT OF ADVANCED THERMAL SCIENCES CORPORATION'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  May 25, 2010<br>Time:  4:00 p.m.<br>Ctrm.  10C<br><br>**[Date and Briefing Schedule set by the Court per 4/28/10 Order – Doc. No. 876]**<br><br>The Honorable James V. Selna |

TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..................................................................................... 1

II. LEGAL STANDARDS ............................................................................ 2

III. ATS IS SEEKING A PROHIBITORY INJUNCTION ........................... 3

IV. THE FOUR FACTORS FAVOR GRANTING AN INJUNCTION ....... 4

    A. ATS Is Likely To Succeed On Its Claim For Ownership Of The AMI Applications ............................................................ 4

    B. The AMI Applications Will Be Irreparably Harmed If AMI Continues To Delay Issuance Of The Allowed Applications ............................................................................... 5

        1. AMI Has Been On Notice That ATS Maintains That AMI Should Be Acting As A Constructive Trustee ............................................................................. 5

        2. AMI Has Not Acted In The Best Interests Of The Trust Assets ........................................................................ 6

    C. The Balance of Hardships Favors Allowing The AMI Applications to Issue .................................................................. 8

        1. AMI's Actions Are Inconsistent With Its Purported Need To Disclose Additional Information To The Patent Office ............................................................................. 8

        2. The Ownership Issues Will Not Be Finally Resolved By This Court's Decision .................................. 10

        3. AMI Cannot Justify Harming The AMI Applications Based On A Post-Trial Change Of Legal Theory ........................................................................ 10

            a. AMI Successfully Argued That This Court Should Decide Ownership Of Entire Patent Filings ........................................................................... 11

            b. After Failing To Present Sufficient Evidence At Trial, AMI Asked The Court To Change The Rules ..................................................................... 12

    D. The Public Interest .................................................................... 13

V. CONCLUSION ...................................................................................... 14

# TABLE OF AUTHORITIES

**Page No(s).**

*Anderson v. United States*,
    612 F.2d 1112 (9th Cir. 1980) ........................................................................ 3

*Dahl v. HEM Pharmaceuticals Corp.*,
    7 F.3d 1399 (9th Cir. 1993) ............................................................................ 3

*Hamilton v. State Farm Fire & Casualty Co.*,
    270 F.3d 778 (9th Cir. 2001) ........................................................................ 14

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) ........................................................................ 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ..................................................................... 3, 4

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003) ...................................................................... 2

*Russell v. Rolfs*,
    893 F.2d 1033 (9th Cir. 1990) ...................................................................... 14

*Transclean Corp. v. Jiffy Lube International, Inc.*,
    474 F.3d 1298 (Fed. Cir. 2007) .................................................................... 14

*Winter v. Natural Resources Defense Council*,
    555 U.S. ___, 129 S. Ct. 365. 172 L. Ed. 2d 249 (2008) .............................. 2

## OTHER AUTHORITIES

35 U.S.C. § 154 .................................................................................................... 7

35 U.S.C. § 286 .................................................................................................... 7

37 C.F.R. § 1.114 ................................................................................................. 6

Plaintiff Advanced Thermal Sciences Corporation ("ATS") submits this Memorandum of Points and Authorities in support of its Motion for Preliminary Injunction.

## I. INTRODUCTION

ATS has consistently maintained throughout this litigation that Applied Materials, Inc. ("AMI") is obligated to prosecute the ten pending AMI patent applications (the "AMI Applications") as a constructive trustee until the parties' ownership dispute is finally resolved. Far from acting to maximize the potential value of those AMI Applications, AMI is actively harming them. Six of the ten AMI Applications are ready to issue as patents. AMI is actively preventing them from issuing by filing requests for further examination with the Patent Office. Unless enjoined by this Court, AMI will continue to irreparably harm the AMI Applications by jeopardizing issuance of the allowed applications and reducing the effective term of any resulting patents. AMI's approach to prosecuting the pending applications is antithetical to acting as a constructive trustee because AMI's delay confers absolutely no potential benefit on the AMI Applications.

AMI has tried to justify preventing issuance of the AMI Applications based on a wholly improper change in AMI's legal strategy. AMI initially thought it could establish that AMI made a contribution to one or more claims in ATS's patent filings. In furtherance of that strategy, AMI successfully persuaded the Court to award ownership of the disputed patent filings on a patent-by-patent (and application-by-application) basis. At trial, AMI was unable to establish any contribution to the ATS patent filings, and AMI now appears to have determined that its all-or-nothing strategy is likely to backfire by giving ATS a one-half undivided ownership interest in the AMI Applications. AMI is preventing the AMI Applications from issuing as patents in the hope that it will allow AMI to circumvent any adverse ruling by this

- 1 -

Court. This is improper and does not justify delaying issuance of the AMI Applications.

ATS requests that the Court enjoin AMI from taking any action that is inconsistent with acting as a constructive trustee of the AMI Applications through final resolution of this matter, including all appeals. ATS specifically requests that the Court order AMI to:

- Refrain from filing any papers with the Patent Office, including Requests for Continued Examination, for the purpose of delaying issuance of the AMI Applications;
- Permit all allowed AMI Applications to issue as patents by promptly paying the issue fee (or allow ATS to do so);
- Provide ATS with copies of any proposed submissions before submitting them to the Patent Office; and
- Serve as a constructive trustee on ATS's behalf in maintaining and prosecuting the AMI Applications, taking all actions necessary for the best interests of the AMI Applications.

## II. <u>LEGAL STANDARDS</u>

The standard for whether to grant preliminary injunctive relief is based upon assessing four factors: (1) the likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of equities between the parties; and (4) the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. ___, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003).

ATS is entitled to injunctive relief because all of the factors favor preserving the value of the AMI Applications. ATS has shown a high likelihood of success on the merits and of irreparable harm. ATS has also shown that the balance of hardships tips sharply in favor of maximizing the value of the disputed patent applications and that prompt issuance poses no risk

of harm to the AMI Applications. The public interest in efficient functioning of the Patent Office and in the integrity of the judicial system also favors granting ATS's requested relief.

AMI has argued that ATS must meet a higher standard because ATS is seeking a "mandatory injunction." (*See* AMI Opp'n to TRO [Doc. No. 872] at 2-3.) AMI's argument is irrelevant because "the facts and law clearly favor the moving party." *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (citing *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1980)). Thus, ATS would be entitled to its requested relief even under a heightened standard. However, AMI's argument is also wrong because it mischaracterizes the relief ATS is seeking.

### III. ATS IS SEEKING A PROHIBITORY INJUNCTION

ATS seeks a prohibitory injunction because it is asking the Court to prevent AMI from actively harming the value of the AMI Applications. "A prohibitory injunction prohibits a party from taking action[,]" whereas, "[a] mandatory injunction 'orders a responsible party to "take action."'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). Requiring AMI to act as a constructive trustee for the AMI Applications is simply another way of saying that AMI is prohibited from taking any actions that are not in the best interest of the AMI Applications. Preserving the value of a disputed asset pending resolution of an ownership dispute is an entirely unremarkable proposition.

Prohibiting AMI from filing RCEs or otherwise harming the AMI Applications is not the type of affirmative action that Courts have characterized as a "mandatory injunction." *See Dahl*, 7 F.3d 1399 (affirming preliminary injunction requiring drug manufacturer to provide the drug and inject it into the veins of people who want it); *Marlyn Nutraceuticals*, 571 F.3d 873 (remanding for further consideration request to recall already distributed product and

- 3 -

provide restitution to customers). Nor is requiring AMI to perform ministerial tasks such as paying the issue fee (or allowing ATS to do so).

AMI has also mischaracterized the *status quo*. The Ninth Circuit has defined the *status quo* as, "the last, uncontested status which preceded the pending controversy." *Marlyn Nutraceuticals*, 571 F.3d at 879. The *status quo* at this point in the case is for AMI to continue to prosecute the AMI Applications for the purpose of maximizing the patent rights. Instead of allowing the claims to issue as a patent by paying the issue fee in the ordinary course, AMI is taking affirmative action to decrease the patent term by preventing the applications from issuing. That is not preserving the *status quo*. Nor is doing nothing an option, because that would cause the AMI Applications to go abandoned. AMI must do something, and for the reasons set forth below, the Court should order AMI to allow the AMI Applications to issue in the ordinary course because that will maximize their value until legal ownership can be finally resolved.

## IV. THE FOUR FACTORS FAVOR GRANTING AN INJUNCTION

### A. ATS Is Likely To Succeed On Its Claim For Ownership Of The AMI Applications

ATS is likely to prevail on its claim for at least partial ownership of the AMI Applications. Although the Court has not yet issued its decision, ATS presented abundant evidence at trial establishing that it made an "inventive or creative contribution" to at least one claim in each of the AMI Applications. (*See* ATS's [Proposed] Findings of Fact and Conclusions of Law at ¶¶ 32-55 [Doc. No. 848 ].) For example, ATS established that it was the first to conceive of the idea of using the electrostatic chuck as an evaporator, and that ATS disclosed that concept to several AMI employees (including Dr. Brillhart and Mr. Fovell) before Dr. Brillhart's alleged conception. (*Id.*)

The Court ruled on summary judgment that "it must consider the alleged

- 4 -

contributions of each party on a claim-by-claim basis" in evaluating ownership of the AMI Applications. (October 6, 2009 Order [Doc. No. 589] at 6, n.2.) However, the Court expressly rejected the proposition that "the Court must *declare* the ownership of each claim of each Application[.]" (*Id.* (emphasis added).) The Court held that the JDA "does not contemplate a claim-by-claim division of patent rights." (*Id.*) The Court concluded that:

> The parties could not have intended to divide IP rights such that, in a single patent *or patent application*, one claim could be joint IP, another claim could ATS's sole IP, and a third claim could be AMI's sole IP. The JDA is clear that ownership of intellectual property rights is divided on a patent-by-patent basis.

(*Id.* (emphasis added).)

Thus, ATS is likely to establish that the AMI Applications are Jointly Developed IP under the parties' Joint Development Agreement, and, consequently, that ATS has an undivided joint ownership interest in the AMI Applications (and any patents that issue therefrom).

### B. The AMI Applications Will Be Irreparably Harmed If AMI Continues To Delay Issuance Of The Allowed Applications

AMI intends to prevent each of the AMI Applications from issuing as patents until after this Court issues a decision in this case. (Ex. 1.)[1] This unilateral decision will cause irreparable harm to the disputed patent applications and is inconsistent with acting as a constructive trustee.

#### 1. AMI Has Been On Notice That ATS Maintains That AMI Should Be Acting As A Constructive Trustee

ATS's Complaint specifically requested that AMI "continue to act as a

---

[1] All exhibits referenced herein are attached to the Katzenellenbogen declaration, filed herewith.

constructive trustee on ATS's behalf in maintaining and prosecuting the [AMI] Patent Applications." (Complaint [Doc. No. 001], Prayer for Relief, at ¶ D.) ATS also raised the issue in pretrial briefing, by explaining that AMI had improperly harmed ATS's interests in the AMI Applications by unilaterally cancelling claims to which ATS had clearly made an "inventive or creative contribution." (ATS's Trial Brief [Doc. No. 675] at 18-20 (requesting that the Court order AMI to take all steps necessary to reinstate the claims that AMI had cancelled).) During closing argument, the Court appeared to agree that ATS would be entitled to sole ownership of any claims in which ATS had an equitable interest and that AMI deleted from the AMI Applications during prosecution. (*See* Ex. 17, Closing Argument Tr. at 11:11-17 ("it seems you would be entitled to relief to force them to restore the property that you had an interest in, and if they have in fact abandoned it under the terms of the agreement allow you to pick it up").) Thus, there is no dispute that AMI knew, at all times during this litigation, that ATS maintained that AMI is required to act as a constructive trustee and was obligated to prosecute the AMI Applications in the best interests of the trust assets, *i.e.*, the AMI Applications.

### 2. AMI Has Not Acted In The Best Interests Of The Trust Assets

Six of the ten AMI Applications have received a Notice of Allowance from the Patent Office. (*See* Exs. 2-7.) These applications will issue as patents upon the ministerial act of paying the issue fee. AMI intends to actively prevent each of the allowed applications from issuing as a patent by filing a Request for Continued Examination ("RCE"). (Ex. 1.) Filing an RCE is an affirmative act that prevents an application from issuing and re-opens substantive examination. *See* 37 C.F.R. § 1.114. AMI's actions are harming the value of the AMI Applications (and ATS's potential interest therein) in at least two ways.

First, AMI is actively preventing the AMI Applications from becoming patents. The Patent Office has determined that the claims of six of the AMI

1   Applications meet the requirements for patentability and are ready to issue as
2   patents.  If AMI pays the issue fees (or allows ATS to pay the issue fees) the
3   allowed applications will issue as patents and the patents will enjoy the statutory
4   presumption of validity.  However, during continued examination, all bets are
5   off.  The examiner may require further amendments and the currently allowed
6   claims may or may not be allowed again.  There can be no genuine dispute that
7   an issued patent is more valuable than a pending patent application.

8           Second, even if the currently allowed claims are eventually allowed
9   again, AMI's filing of RCEs is *certain* to reduce the effective term of any patent
10  that issues.  AMI cannot dispute that filing RCEs is guaranteed to reduce the
11  term of the patents.  *See* 35 U.S.C. § 154(a)(2) (the term of a patent shall begin
12  on the date on which the patent issues and end 20 years from the date on which
13  the application for the patent was filed).  Nor can AMI dispute that this delay
14  can only harm the value of the AMI Applications because the eventual owner(s)
15  will be unable to seek compensation for use of the claimed technology during
16  the period of continued examination.

17          AMI's observation that ATS does not currently know whether anyone is
18  "infringing" the allowed claims misses the point.  As AMI has repeatedly
19  pointed out during this litigation, companies are secretive about their
20  semiconductor fabrication equipment.  It may take years to determine whether
21  anyone is currently infringing the allowed claims.  If the patents are allowed to
22  issue, their eventual owner(s) will have six years to discover and seek damages
23  or royalties for currently unknown infringement.  *See* 35 U.S.C. § 286.
24  However, ATS will never be able to recover for such activities that occur during
25  AMI's delay.  That harm is irreparable.  The fact that ATS cannot currently
26  quantify the harm does not alter its irreparability.

27          Moreover, enjoining AMI from filing additional RCEs is critical because
28  any new RCE is likely to cause a much greater delay in prosecution than the

1  RCEs that AMI filed during the active stages of this litigation. The Patent
2  Office recently changed its internal procedures for handling RCEs. As of
3  November 15, 2009, patent examiners are no longer required to act on RCEs
4  within two months. (Ex. 8.) In addition, examiners now receive less credit for
5  examining RCE applications than for examining other types of applications, and
6  they receive even less credit for examining applications in which multiple RCEs
7  have been filed. (Exs. 9-10.) This is likely to result in a significant delay in
8  action on RCEs. Practitioners have suggested that RCEs filed on or after
9  November 15, 2009 may not be acted on for many months, or even more than a
10 year, from the filing of the RCE. (*See id.*)

11     Even AMI appears to recognize that delay is harming the AMI
12 Applications. AMI agreed to withdraw its request for a suspension of action in
13 connection with one of the AMI Applications because it would have reduced the
14 effective patent term, and AMI has agreed not to file similar requests for the
15 other AMI Applications. (Ex. 1.) Nevertheless, allowing AMI to prevent each
16 of the allowed AMI Applications from issuing by filing RCEs would produce
17 the same result – a shorter patent term.

18 **C.    The Balance of Hardships Favors Allowing The AMI Applications to**
19        **Issue**
20        **1.    AMI's Actions Are Inconsistent With Its Purported Need To**
21              **Disclose Additional Information To The Patent Office**

22     AMI's plan to prevent issuance of the allowed AMI Applications does not
23 confer any benefit on the AMI Applications, let alone one that could outweigh
24 the irreparable harm to the AMI Applications and their eventual legal owner(s).
25 AMI initially asserted that filing RCEs was necessary to allow AMI to submit
26 information relating to the present litigation to the Patent Office to satisfy
27 AMI's duty of candor. (*Id.*) This argument may have had some merit during
28 the active stages of this litigation when AMI could have been concerned about

material information arising on a rolling basis. However, there is no longer any such concern. The trial ended in November, and closing arguments were completed in December. AMI has had over four months to submit to the Patent Office any material information from the trial. Moreover, prior to November 15, 2009, the harm of submitting an RCE was relatively minor because examiners were required to act on RCEs within two months. That is also no longer the case. At this point, AMI is simply invoking the general obligation to disclose material information as an excuse to delay prosecution and harm the AMI Applications.

For example, AMI submitted references to the Patent Office in connection with U.S. Application No. 11/409,184 on December 22, 2009, and again on January 18, 2010. (Exs. 11-12.) Yet AMI did not submit any documents relating to the litigation. Similarly, AMI submitted references to the Patent Office in connection with U.S. Application No. 11/409,326 on January 15, 2010, but did not include any litigation-related information. (Ex. 13.) AMI also provided additional information regarding this application to the Patent Office on February 8, 2010, and March 5, 2010, again without mentioning the litigation or submitting any litigation documents. (Exs. 14-15.) AMI's assertion that it now needs to prevent issuance of the AMI Applications and harm their value because AMI wants to submit information that could have been submitted months ago does not justify further delay. AMI's failure to timely submit to the Patent Office information that AMI purportedly considers material further confirms that AMI is not acting in the best interests of the AMI Applications.

Thus, the balance of hardships strongly favors preventing AMI from filing further RCEs or otherwise delaying issuance of the AMI Applications.

/ / /

/ / /

- 9 -

## 2. The Ownership Issues Will Not Be Finally Resolved By This Court's Decision

AMI has stated that the "issuance [of the patents] should await the Court's decision in the matter." (Ex. 1.) This is incorrect for at least two reasons.

First, there is no reason why AMI should wait for the Court's decision *before* acting in the best interests of the AMI applications. Indeed, AMI has been on notice that it should be acting as a constructive trustee from the inception of the case. As a constructive trustee, AMI should be acting in the best interests of the assets of the trust until legal ownership of those assets is finally resolved. Regardless of the outcome of this litigation, the interests of the assets of the trust, *i.e.*, the AMI Applications, as well as the interests of the eventual legal owner(s) of those assets, are best served by maximizing the effective patent term and the likelihood of the AMI Applications issuing as patents. AMI should be prosecuting the AMI Applications to ensure that they issue as promptly as possible. There is simply no advantage to the AMI Applications or to their eventual owner(s) by delaying issuance of the patents until this Court issues its decision.

Second, as a practical matter, no matter how this Court ultimately rules on the merits of this case, the Court's decision most likely will be appealed. Unless and until AMI assigns legal ownership to ATS, or a court of last resort conclusively determines that ATS has no legal interest in the AMI Applications, AMI should be prosecuting the AMI Applications as a constructive trustee.

## 3. AMI Cannot Justify Harming The AMI Applications Based On A Post-Trial Change Of Legal Theory

AMI now argues that it should be allowed to file RCEs because AMI anticipates trying to divide out from the AMI Applications the claims that cover ATS's technology. AMI's newfound concern over segregating the parties'

- 10 -

respective intellectual property rights is disingenuous and wholly inconsistent with AMI's legal arguments in this case. AMI had no concern about comingling the parties' intellectual property rights when AMI filed the AMI Applications with claims that covered ATS's technology. AMI had no concern about receiving a "windfall" when AMI argued that contributing to even a single claim in an ATS patent filing should give AMI joint ownership over an entire ATS patent or patent application. Nor did AMI have any concern about joint ownership of patent filings containing comingled claims when AMI successfully advocated for this Court to decide ownership of the parties' respective patent filings on a patent-by-patent (and application-by-application) basis. AMI only expressed concern about joint ownership of patent filings containing mixed claims when AMI decided *after trial* that a different analysis would benefit AMI. AMI's decision to change its litigation strategy does not justify allowing AMI to actively harm the AMI Applications.

### a. AMI Successfully Argued That This Court Should Decide Ownership Of Entire Patent Filings

AMI made the strategic decision to advocate for a patent-by-patent (and application-by-application) determination of ownership of the parties' respective patent filings. AMI specifically argued that a contribution to even a single claim in one of ATS's patent filings would give AMI joint ownership of the entire patent or patent application. (AMI's Trial Brief at 11 [Doc. No. 676] ("if Applied made an 'inventive or creative' contribution to the conception *or* first reduction to practice *of even a single claim* in an ATS Patent Filing, it would render that patent filing 'Jointly Developed IP,' and not 'Supplier Developed IP' or 'Pre-Existing IP'") (second emphasis added); *see also id.* at 9-10.) AMI never suggested that there would be anything unfair about AMI obtaining an ownership interest in an entire ATS patent filing based on contributing to only a single claim. Nor did AMI ever suggest that ATS should keep ATS's patent

applications from issuing during the pendency of this case so that ATS could eventually carve out any claims to which AMI may have contributed.

When AMI thought it was to AMI's advantage, AMI similarly argued that the Court should decide summary judgment of ownership of the AMI Applications on an application-by-application basis. (*See* AMI's Reply in Supp. of Mot. for Summ. J. Regarding Ownership [Doc. No. 579] at 13-17.) AMI specifically argued that, "[t]he IP provisions of the JDA apply to patents ***and patent applications***, rather than individual claims" and that, "***contractual joint ownership, as well as the other ownership categories, are assigned on a patent and application basis***." (*Id.* at 13 (emphasis added), 15 (emphasis added).) Thus, prior to trial, AMI saw nothing wrong with allocating undivided joint ownership of pending patent applications based on contributions to only some of the claims. AMI also opposed a claim-by-claim analysis because it would have required reevaluating ownership every time the claims changed during prosecution. (*Id.* at 17.)

As discussed above, AMI successfully persuaded this Court to adopt AMI's position. (*See* October 6, 2009 Order Denying AMI's MSJ Re Ownership [Doc. No. 589] at 6 n.2.) This Court then conducted a bench trial in this matter from November 10-20, 2009. As a result, ATS presented its evidence at trial in accordance with the Court's ruling on summary judgment that ownership would be determined patent-by-patent (and application-by-application).

### b. After Failing To Present Sufficient Evidence At Trial, AMI Asked The Court To Change The Rules

At trial, AMI was unable to establish that AMI contributed to the ATS patent filings. AMI was specifically unable to offer any evidence disputing that ATS was first to conceive and reduce to practice Claim 3 of the '835 Patent in 2000 and 2001. (Trial, Day 7 November 20, 2009 (afternoon) at 8:18-11:14.

*See* Ex. 16.) Nor was AMI able to offer any evidence disputing that ATS was first to conceive and reduce to practice Claim 4 of the '835 Patent in 2000 and 2001. (*Id.* at 11:15-13:13; *see also,* ATS's Findings of Fact ¶¶ 43-94 [Doc. No. 848].)

After AMI failed to establish any contribution to ATS's patent filings, AMI's post-trial briefing completely contradicted its earlier arguments. AMI argued that, "[s]hould the Court conclude that ATS is entitled to joint ownership of any of the contested claims, ***the proper remedy would be joint ownership of the contested claims only, and not the relevant Applications in their entirety***." (AMI Post-Trial Brief [Doc. No. 859] at 12 (emphasis added.) AMI also recently asserted that awarding joint ownership of an entire patent filing based on contributing to less than all of the claims "would potentially be expropriating claims to which it is not entitled." (AMI Opp'n to Application for TRO [Doc. No. 872] at 9.) AMI had no such concerns when it sought precisely this result with regard to the ATS filings. The Court should not allow AMI to use a heads-I-win, tails-you-lose approach to litigation as a justification for harming the AMI Applications. AMI cannot justify delaying issuance of the AMI Applications by arguing that this Court's decision on the merits will allow AMI to unilaterally decide how to carve up the applications on a claim-by-claim basis to gain exclusive ownership of certain claims.

## D.   The Public Interest

The public interest in efficient operation of the patent system favors prompt issuance of the allowed AMI Applications. Preventing AMI from filing needless RCEs will reduce backlog in the already overcrowded Patent Office. It will also provide the interested members of the public with the earliest possible notice of the patented subject matter. The public will not be better served by allowing AMI to artificially delay the issuance of patents with allowed claims.

/ / /

- 13 -

The public also has an interest in preventing litigants from trying to game the judicial system in the manner contemplated by AMI.  "The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal." *Helfand v. Gerson,* 105 F.3d 530, 535 (9th Cir. 1997). *See also Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" (citing *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)); *Transclean Corp. v. Jiffy Lube International, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007).

## V. CONCLUSION

For the reasons set forth above, the Court should enter the [Proposed] Preliminary Injunction.  Until a final non-appealable decision is issued in this case or the time for any such appeal expires, AMI should be ordered to:

(1) Refrain from filing any papers with the Patent Office, including Requests for Continued Examination, for the purpose of delaying issuance of the AMI Applications;

(2) Permit all allowed AMI Applications to issue as patents without delay, including by promptly paying the issue fee (or allowing ATS to do so);

(3) Provide ATS's counsel of record in this litigation with copies of any proposed submissions to the Patent Office at least 5 days before submitting the papers to the Patent Office; and

/ / /

/ / /

/ / /

(4) Serve as a constructive trustee on ATS's behalf in maintaining and prosecuting the AMI Applications, taking all actions necessary for the best interests of the AMI Applications.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 4, 2010    By: /s/ Benjamin A. Katzenellenbogen
　　　　　　　　　　　　　　Joseph R. Re
　　　　　　　　　　　　　　Jon W. Gurka
　　　　　　　　　　　　　　Benjamin A. Katzenellenbogen
　　　　　　　　　　　　　　Colin B. Heideman

KATTEN MUCHIN ROSENMAN LLP
Steven A. Lamb (State Bar No. 132,534)
steven.lamb@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 712-8257

Attorneys for Plaintiff / Counterdefendant
ADVANCED THERMAL SCIENCES CORPORATION

8948071_5
0504510

- 15 -